No. 23-6775

# In the
# United States Court of Appeals
## for the Fourth Circuit

Eric Rich
*Plaintiff–Appellant,*

v.

Daniel Hersl
*Defendant–Appellee.*

On Appeal from the United States District Court
for the District of Maryland
Baltimore Division

## Appellant's Opening Brief

Christopher S. Edwards
Ward and Smith, P.A.
P.O. Box 7068
Wilmington, NC 28406-7068
910-794-4800
csedwards@wardandsmith.com

*Counsel for Plaintiff–Appellant*

# Table of Contents

Table of Cases and Authorities ................................................................ iii

Introduction ............................................................................................. 1

Statement of Jurisdiction ......................................................................... 3

Statement of the Issue ............................................................................. 3

Statement of the Case .............................................................................. 4

    I.    Daniel Hersl has Eric Rich arrested after threatening to plant a gun on Mr. Rich. ................................................................. 4

    II.   Mr. Rich sues Hersl for violating his constitutional rights. ........ 7

Summary of the Argument ....................................................................... 8

Argument ................................................................................................. 9

    I.    The standard of review is de novo. ............................................... 9

    II.   A jury should determine whether Hersl had probable cause to arrest Mr. Rich given Hersl's repeated threats toward—and motive to retaliate against— him. ............................................... 10

        A.   Hersl's repeated threats to plant a gun on Mr. Rich are enough to dispute whether Hersl had probable cause. ............................ 11

        B.   Mr. Rich's statements are competent evidence, showing that Hersl lacked probable cause. ................................................... 14

        C.   Though there are few analogous cases, those that exist support Mr. Rich's position. ................................................................. 16

Conclusion .............................................................................................. 18

Statement Regarding Oral Argument ...................................................... 18

# Table of Cases and Authorities

## Cases

*Brooks v. City of Winston-Salem,*
  85 F.3d 178 (4th Cir. 1996) ................................................................ 10

*Celotex Corp. v. Cartrett,*
  477 U.S. 317 (1986). .......................................................................... 14

*Cowgill v. First Data Techs.,*
  41 F.4th 370 (4th Cir. 2022) .............................................................. 14

*Elliot v. Leavitt,*
  99 F.3d 640 (4th Cir. 1996) ................................................................ 17

*Hamre v. City of Bothell,*
  81 F. App'x 260 (9th Cir. 2003) .......................................................... 16

*Nazario v. Gutierrez,*
  103 F.4th 213 (4th Cir. 2024) ............................................................. 10

*Robinson v. Priority Auto. Huntersville, Inc.,*
  70 F.4th 776 (4th Cir. 2023) ........................................................... 4, 10

*Smith v. Munday,*
  848 F.3d 248 (4th Cir. 2017) .............................................................. 10

*Stanton v. Elliot,*
  25 F.4th 227 (4th Cir. 2022) ................................................................. 9

*United States v.*
  *Sklena*, 692 F.3d 725 (7th Cir. 2012) ................................................. 14

## Statutes

28 U.S.C. § 1291 ..................................................................................... 3

28 U.S.C. § 1331 ............................................................3

42 U.S.C. § 1983 .................................................... passim

**Rules**

Fed. R. Civ. P. 56 .....................................................10

## Introduction

Daniel Hersl was once a detective with the Baltimore Police Department. But Hersl wasn't a good cop. In 2018, a jury in the District of Maryland found him guilty of racketeering. *See* Judgment, *United States v. Hersl*, No. 1:17-CR-106-GLR-3 (D. Md. June 26, 2018) (ECF No. 442). Though Hersl's racketeering crimes appear to have started in 2015, Superseding Indictment, *Hersl*, No. 1:17-CR-106-GLR-3 (D. Md. June 22, 2017) (ECF No. 137), he was a bad egg long before.

Hersl knew Eric Rich from the streets. And he knew Mr. Rich was a felon. In an apparent effort to have Mr. Rich cooperate with the Baltimore Police Department as a confidential informant, Hersl began threatening Mr. Rich. For example, in June 2007, Hersl threatened to plant marijuana on Mr. Rich. The threats only escalated from there. Between July and October 2007, Hersl threatened to plant a gun on Mr. Rich at least three times.

In October 2007, just one day after threatening to plant a gun on Mr. Rich, Hersl arrested him for being a felon in possession of a firearm. On the day of his arrest, Mr. Rich did not have a gun. And no one in the police department—not even Hersl's partner, Calvin Moss—can verify

Hersl's claim that he did. At the time, Mr. Rich had been trying to report Hersl to the Baltimore Police Department's Internal Affairs unit. But Hersl made good on his threat and had Mr. Rich arrested before he had the chance.

Mr. Rich's arrest led to state charges and, eventually, federal ones too. But those charges did not stick. When Mr. Rich's attorney subpoenaed the Baltimore Police Department's file on Hersl, both the state and federal governments dropped the charges.

Following Hersl's 2018 conviction, Mr. Rich sued Hersl, alleging violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. After discovery, Hersl moved for summary judgment. Even though the undisputed evidence, viewed in the light most favorable to Mr. Rich, showed that Hersl had repeatedly threatened Mr. Rich, the district court ignored that evidence. Instead, it focused on the marijuana incident in isolation and granted Hersl's motion for summary judgment on all Mr. Rich's § 1983 claims.

This Court should reverse.

## Statement of Jurisdiction

Mr. Rich asserted a claim under 42 U.S.C. § 1983, so the district court had jurisdiction over Mr. Rich's case under 28 U.S.C. § 1331. It entered judgment on July 20, 2023. JA142. Mr. Rich timely appealed on July 31, 2023. JA143. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issue

The district court granted Hersl's motion for summary judgment because it determined that Mr. Rich didn't have any evidence that Hersl had planted the handgun that led to Mr. Rich's arrest. But Hersl had a motive to plan the gun, and he had threatened to do so.

The issue on appeal is: Did the district court err when it determined that Hersl had probable cause to arrest Mr. Rich for unlawfully possessing a firearm, when Hersl had threatened to plant a gun on Mr. Rich the day before?

## Statement of the Case

Eric Rich started having run-ins with Baltimore City Police around 2000.[1] JA111. Eventually, Mr. Rich was convicted of a felony. Daniel Hersl knew Mr. Rich through those contacts with the police. JA103.

## I. Daniel Hersl has Eric Rich arrested after threatening to plant a gun on Mr. Rich.

In October 2007, Baltimore police arrested Mr. Rich at Hersl's direction. JA102–03.

Hersl and Mr. Rich had been in regular contact in the months before the arrest. For at least four months, Hersl had used threats, made to both Mr. Rich and those around him, to "pressure" Mr. Rich into becoming a confidential informant for the Baltimore Police Department. JA111.

Often, to compel Mr. Rich's cooperation, Hersl would threaten "to plant a gun or drugs" on him. JA111. For example, in June 2007, Hersl threatened to plant drugs on Mr. Rich. JA110–11. Then, in July, Hersl illegally stopped Mr. Rich and his girlfriend, Deana Brown, in the street,

---

[1] These facts are taken from the evidence, viewed in the light most favorable to Mr. Rich. *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023).

where he threatened to plant a gun on Mr. Rich. JA110. Hersl did it again a month later in the 100 block of Bond Street. JA110–111.

In July or August 2007, Mr. Rich tried to stop Hersl's threats. For example, after the July 2007 encounter, Mr. Rich tried to file a complaint against Hersl with the Baltimore Police Department. JA169. And during the August 2007 confrontation, Mr. Rich called 9-1-1 to report Hersl. JA169–170.

On October 1, 2007, a member of the police department— presumably Hersl—told Mr. Rich, "If I see you on the street, I'm gonna put a gun on you and this time it will stick." JA167 (cleaned up). The next day, Mr. Rich was arrested.

 On the day of Mr. Rich's arrest, Hersl and his partner, Calvin Moss, were on top of a parking garage overlooking the 100 block of Baltimore's Bond Street. JA102–103. Given an uptick in gun seizures in the neighborhood, Hersl and Moss wanted to scout the area. JA102–103. They did so from on top of the garage so they could see without being seen. JA102–03. Hersl positioned himself so he could see the street.

JA102–03. Moss, by contrast, "limited" his involvement to "overwatch." JA102–103. In other words, Moss was watching Hersl.

From atop the garage, Hersl saw Mr. Rich, who was in the neighborhood to play basketball. JA159. Mr. Rich did not have a gun on him. JA110. Even so, Hersl told his Moss that Mr. Rich did. JA103. According to Hersl, Mr. Rich "had walked across the street" and "placed [the gun] near a bush." JA103. Moss could not verify Hersl's claim. JA103. By the time he peered over the edge of the garage, he saw Mr. Rich crossing the street in the opposite direction, but nothing else. JA103.

From the garage, Hersl called for backup. JA103. Even though Mr. Rich didn't have a gun, so he couldn't have put one under the bush, Hersl ordered the assisting officers to arrest Mr. Rich. JA103, 159–160. Hersl then searched the bush and claimed to find a pistol lying underneath. JA103, 110. As a result of his arrest, Mr. Rich was charged with crimes under both Maryland and federal law, but they were eventually dismissed. *See* JA93 (showing Hersl's agreement that those charges were dismissed).

## II. Mr. Rich sues Hersl for violating his constitutional rights.

That arrest led Mr. Rich to sue Hersl in February 2020. JA3. He amended his complaint later in the year. JA4. The amended complaint asserted claims for illegal or false arrest, false imprisonment, and malicious prosecution, in violation of Mr. Rich's Fourth and Fourteenth Amendment rights, against Hersl under 42 U.S.C. § 1983. JA33–47.

In February 2023, Hersl moved for summary judgment on Mr. Rich's § 1983 claims. JA90.

According to Hersl, the only factual issue was whether he "planted the handgun on" Mr. Rich when he arrested Mr. Rich in October 2007. JA98. Hersl argued that the only way Mr. Rich could prevail was to show that Hersl planted the gun. JA98–99. To show that he did not, Hersl relied on a declaration executed by his partner, Calvin Moss, as well as Mr. Rich's discovery responses. JA102–119. Mr. Rich opposed the motion, relying on the Baltimore Police Department's file documenting the Department's efforts to investigate Mr. Rich's complaints about Hersl. JA149–150.

In July 2023, the district court granted Hersl's motion. JA129–142. In so doing, apparently glossed over key evidence to support Mr. Rich's

claim. For example, it failed to cite Hersl's August and October 2007 threats. Instead, the court focused solely on Hersl's June 2007 threat about planting marijuana.

Mr. Rich timely appealed. JA143.

## <u>Summary of the Argument</u>

This Court should reverse the district court's judgment and allow Mr. Rich's 42 U.S.C. § 1983 claims to go to trial.

1.      Viewing the evidence in the light most favorable to Mr. Rich, it shows that Hersl repeatedly threatened to plant contraband—either drugs or gun—on Mr. Rich, with the most recent threat coming the day before Mr. Rich's arrest. Though Mr. Hersl apparently threatened Mr. Rich to pressure him to become a confidential informant, Hersl's final threat—and Mr. Rich's arrest—came only after Mr. Rich called the police during an argument with Hersl. Mr. Rich was arrested in the same place that Hersl had threatened him.

2.      Although the record is thin, Mr. Rich's statements are enough to survive summary judgment. They are not conclusory—he provides specific dates and quotes. And there is no other evidence to contradicted Mr. Rich's version of the facts. The only evidence to contradict Mr. Rich's

testimony is a declaration by Hersl's partner, Calvin Moss. But that declaration reveals that Moss did not see Mr. Rich with a gun.

3.    There are few cases like this one. Those that do exist support Mr. Rich's view that Hersl's threats, and their timing, should be enough to overcome a motion for summary judgment.

## Argument

The district court erred when it granted Daniel Hersl's motion for summary judgment. The record shows that Hersl repeatedly threatened to plant contraband—whether drugs or guns—on Mr. Rich. And the last threat came just *one day* before Mr. Rich's arrest. What's more, in the months just before Mr. Rich's arrest, Mr. Rich had attempted to report Hersl's harassment to his superiors. Viewing that evidence in the light most favorable to Mr. Rich, a jury could conclude that Hersl planted the gun—and thus that he lacked probable cause to arrest Mr. Rich.

This Court should reverse the district court's judgment.

## I.    The standard of review is de novo.

This Court reviews a district court's ruling on summary judgment de novo. *Stanton v. Elliot*, 25 F.4th 227, 234 (4th Cir. 2022). Summary judgment is appropriate only if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court should draw all reasonable inferences in the light most favorable to the nonmoving party—Mr. Rich. *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023).

## II. A jury should determine whether Hersl had probable cause to arrest Mr. Rich given Hersl's repeated threats toward— and motive to retaliate against— him.

The only issue on appeal is whether Hersl had probable cause to arrest Mr. Rich. Neither a false imprisonment nor a malicious prosecution claim can succeed unless the arresting officer lacks probable cause. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181–82 (4th Cir. 1996) (false arrest and false imprisonment); *Smith v. Munday*, 848 F.3d 248, 252–53 (4th Cir. 2017) (malicious prosecution). Probable cause means "a reasonable ground for belief of guilt." *Nazario v. Gutierrez*, 103 F.4th 213, 226 (4th Cir. 2024).

Viewing the evidence in the light most favorable to Mr. Rich, a jury could conclude that Hersl lacked probable cause. Hersl repeatedly threatened to plant evidence on Mr. Rich—as part of a plan to turn Mr. Rich into a confidential informant. But in the months after Mr. Rich tried

to report Hersl's behavior, Hersl threatened him one final time before arresting Mr. Rich.

Mr. Rich's evidentiary forecast is enough to survive summary judgment. True, the evidence comes from self-serving statements. But in he-said/he-said disputes, that's often the case. Mr. Rich's statements go beyond bare conclusions; he has provided facts—including dates—that support his claim. Although there appear to be few cases with similarly egregious facts, courts that have dealt with similar issues have concluded that threats like those Hersl made were enough to survive summary judgment.

### A.   Hersl's repeated threats to plant a gun on Mr. Rich are enough to dispute whether Hersl had probable cause.

The evidence, viewed in the light most favorable to Mr. Rich, shows that Hersl repeatedly threatened Mr. Rich and had a motive to have Mr. Rich arrested.

The evidence shows that Hersl targeted Mr. Rich, threatening to plant contraband to support bogus charges. Between June and August 2007, Hersl threatened to plant drugs or guns on Mr. Rich at least three times. In June 2007, Hersl threatened arrest Mr. Rich on marijuana charges. JA110. Then, the next month, he threatened to plant a gun on

Mr. Rich. JA110. Finally, in August 2007, Hersl again threatened to plant a gun on Mr. Rich—this time in the 100 block of Bond Street, the same place Hersl eventually had Mr. Rich arrested. JA110–111.

The evidence also shows that Mr. Rich tried to stop Hersl's harassment and that Hersl was aware of it. After the July 2007 encounter, Mr. Rich tried to file a complaint against Hersl with the Baltimore Police Department. JA169. Then, during the August 2007 confrontation on Bond Street, Mr. Rich called 9-1-1 to report Hersl. JA169–170. The officers responded to Mr. Rich's call *while Hersl was still there.* JA169–170.

Finally, the evidence shows that, soon after Mr. Rich tried to report Hersl to his superiors, Hersl threatened him again, only to have Mr. Rich arrested the next day. Hersl apparently abandoned his desire to have Mr. Rich serve as a confidential informant after Mr. Rich called 9-1-1 during their August 2007 confrontation in the 100 block of Bond Street. In October 2007, someone from the Baltimore Police Department—presumably Hersl—again threatened to plant a gun on Mr. Rich. JA167. Hersl had Mr. Rich arrested the next day—in the same place where he'd promised to plant a gun on Mr. Rich just two months earlier. JA103.

Taken together, that evidence should have been more than enough to survive a motion for summary judgment. At trial, the evidence would show that Hersl repeatedly threatened Mr. Rich with baseless charges—including threatening to plant a gun on Mr. Rich the day before his arrest. While Hersl first wanted Mr. Rich to serve as a confidential informant, he abandoned that motive after Mr. Rich called 9-1-1 during their August 2007 encounter. While Mr. Rich doesn't have direct evidence that Hersl planted a handgun on him in October 2007, this circumstantial evidence allows the Court to infer that Hersl did so.

The district court didn't credit Mr. Rich's evidence, ignoring some of it while also relying instead on irrelevant facts. For instance, the court failed to acknowledge that, in July and August, Hersl had threatened to plant a gun on Mr. Rich. *See* JA138. Likewise, the district court failed to credit Ms. Brown's statement to the Baltimore Police Department's Internal Affairs investigator that, the day before Hersl arrested Mr. Rich, "[t]he [p]olice" had again threatened to plant a gun on Mr. Rich. JA138–140; *see also* JA167.[2] Each statement is competent evidence to support Mr. Rich's claim.

---

[2] It doesn't matter that Ms. Brown's statement might be hearsay. A party opposing summary judgment need not "produce evidence in a form that would be admissible at trial in order to avoid summary

\* \* \*

Because the evidence, viewed in the light most favorable to Mr. Rich, supports his claim, this Court should reverse the district court's judgment and allow Mr. Rich's case to go to trial.

### B.   Mr. Rich's statements are competent evidence, showing that Hersl lacked probable cause.

The record is, admittedly, thin, and Mr. Rich's evidence largely consists of his own statements, including his interrogatory responses. Even so, that should not sway the Court's analysis.

It doesn't matter that Mr. Rich's evidence might be self-serving. "To say that evidence is self-serving tells us practically nothing: a great deal of perfectly admissible testimony fits that description." *United States v. Sklena*, 692 F.3d 725, 733 (7th Cir. 2012); *accord Cowgill v. First Data Techs.*, 41 F.4th 370, 383 n.8 (4th Cir. 2022). The Court should discount self-serving testimony only if it is (1) uncorroborated opinion evidence or (2) there is evidence to the contrary. *See Cowgill*, 41 F.4th at 383 n.8.

Neither circumstance for discounting self-serving testimony applies here.

---

judgment." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 324 (1986). Ms. Brown could testify live if this case were to go to trial.

First, Mr. Rich's testimony is not opinion. He's testifying to facts. For example, although Mr. Rich doesn't remember much about his arrest, he does recall threats from Hersl on June 29, July, and August 3, 2007. JA110. To bolster his statements, Mr. Rich also recalls the specific address where Hersl threatened to plant a gun on him—135 North Bond Street. JA110.

Second, there's nothing in the record to contradict Mr. Rich's testimony. The only other person who could have seen Mr. Rich with a gun before his arrest—and thus the only person who could support Hersl's position—is Moss. But Moss never saw Mr. Rich with a gun. As Moss explains in his declaration, Hersl told him that he'd seen Mr. Rich with a gun. JA103. Moss himself merely "peeked over the edge" of the garage and "observed Mr. Rich" crossing Bond Street. JA103. Moss never testified that he saw Mr. Rich with a gun.

In sum, Mr. Rich's interrogatory responses and the Baltimore Police Department's internal investigation files that he submitted in opposition to Hersl's motion should be enough to survive summary judgment.

**C.    Though there are few analogous cases, those that exist support Mr. Rich's position.**

Hersl's threats and motive should be enough evidence to survive a motion for summary judgment. Even so, there do not appear to be many cases that address situations like these. But those that exist support Mr. Rich.

The Ninth Circuit has concluded, when a police officer appears to make good on a threat, a jury should determine whether the officer had probable cause. In *Hamre v. City of Bothell*, 81 F. App'x 260 (9th Cir. 2003), Bothell police officer Eric White responded to a complaint at Steven Hamre's house. *Id.* at 261–62. While there, Hamre and White argued, which led White to threaten to "deal with" Hamre "later." *Id.* 262. And deal with Hamre he did. Several weeks after the incident, White charged Hamre with three crimes under Washington law. *Id.* at 262. When those charges terminated in Hamre's favor, he sued the city and White under § 1983 for false arrest. *Id.* The district court granted White's summary judgment motion, but the Ninth Circuit reversed. It reasoned that White's threat to "deal with Hamre later" was enough to send his false arrest claim to the jury. *Id.* at 262–63 (cleaned up).

The facts here warrant the same result. The evidence viewed in the light most favorable to Mr. Rich shows that Hersl repeatedly threatened to plant a gun on Mr. Rich. It shows that those threats were frequent and pervasive. And it shows that after Mr. Rich alerted the Baltimore Police Department about Hersl's conduct, Hersl made good on his threats, having Mr. Rich arrested for being a felon in possession of a firearm.

In that way, Mr. Rich's case is must closer to *Hamre* than to this Court's decision in *Elliot v. Leavitt*, 99 F.3d 640, 644–45 (4th Cir. 1996), a case that also dealt with manufactured evidence. There, the plaintiff offered little to support his claim that the officers planted a gun on him, relying solely on the fact that he did not have a gun. *Id.* Despite that claim, the Court concluded Elliot couldn't overcome the officers' corroborated statements that he had been holding a gun. *Id.*

There's nothing to corroborate Hersl's claim here. Mr. Rich does not remember the specifics of his arrest. JA110. And Hersl has not submitted a declaration. The only person who has, Hersl's former partner Calvin Moss, never saw Mr. Rich with a gun. JA102–103. As Moss' declaration shows, he was watching Hersl, not the ground, until it was too late. JA102–103. By the time Moss peered over the side of the garage, he saw

only Mr. Rich crossing the street. JA102–103. Without corroborating evidence, the Court is left with Mr. Rich's word against Hersl's.

In short, while there are few cases that address situations like Mr. Rich's, those that do support Mr. Rich's position. This Court should reverse the district court's judgment.

## Conclusion

For those reasons, this Court should reverse the district court's judgment and allow Mr. Rich's § 1983 claim to go to trial.

## Statement Regarding Oral Argument

Because there are few § 1983 cases in which an officer makes good on a threat to plant evidence, Mr. Rich believes that oral argument would advance this Court's precedent and aid the Court in making its decision. Mr. Rich requests oral argument.

Respectfully submitted, this the 21st of August 2024.

**WARD AND SMITH, P.A.**

*/s/ Chris Edwards*
Christopher S. Edwards
N.C. State Bar I.D. No.: 48385
csedwards@wardandsmith.com
Post Office Box 7068
Wilmington, NC 28406
Telephone: 910.794.4800
Facsimile: 910.794.4877
csedwards@wardandsmith.com

## <u>Certificate of Compliance</u>

1.    This brief complies with type-volume limit in 32(a)(7)(B), because, exclusive of the portions of the documents exempted by Rules 32(f), this document contains **3,493** words.

2.    Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportional-width typeface using Microsoft Word 2016 in 14-point Century Schoolbook.

*/s/ Chris Edwards*
Christopher S. Edwards

## Certificate of Filing and Service

I hereby certify that on August 21, 2024, I caused the foregoing to be electronically filed with the Clerk of this Court using CM/ECF, which will send notifications of such filing to all registered participants.

*/s/ Chris Edwards*
Christopher S. Edwards